BUTTS, Justice.
M.R. Megginson and Nina Gale Meggin-son filed an action against Walter A. Pein-hardt, Jr., and Linda Jean Peinhardt and First Commercial Bank of Cullman County, seeking to quiet title to certain lakefront property that had been owned by the Pein-hardts, and that First Commercial had sold to the Megginsons after foreclosing on a mortgage covering that property. The Pein-hardts counterclaimed against the Meggin-sons and cross-claimed against First Commercial, arguing that they had completed all the requirements for redeeming the property within the statutory time. The trial court granted the Megginsons’ motion for summary judgment, holding that the Peinhardts had not met the redemption requirements within the statutory time and that the Meg-ginsons therefore had clear title to the property. The Peinhardts appeal.
I.
A summary judgment is proper if there exists no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. Here, the facts have been stipulated and are as follows: Before October 22, 1992, the Pe-inhardts purchased four parcels of property located in Cullman County, subject to a mortgage held by First Commercial. On October 22,1992, the Peinhardts were served notice of First Commercial’s intent to foreclose on the mortgage; on that same day, the mortgage sale was conducted and a foreclosure deed was executed in First Commercial’s favor.
On June 7, 1993, First Commercial sold a lakefront portion of the property to the Meg-ginsons.[1] Within the following week, the Peinhardts requested from First Commercial a statement of lawful charges and amounts necessary to redeem the property. On June 15, 1993, First Commercial sent a letter to the Peinhardts, informing them that the total amount of the unpaid debt, interest, and the costs of foreclosure was $52,499.46; that the property had been divided and sold in separate transactions; and that the Peinhardts would have to contact the purchasers to determine what other amounts could be charged as expenses and whether the purchasers had made improvements that the Peinhardts would have to pay for.
The Peinhardts subsequently requested that the Megginsons provide a statement of the total “payoff” on the lakefront portion of the property. The Megginsons’ attorney sent the Peinhardts a letter containing this statement:
“At closing, Mr. Megginson paid $55,-719.75. In addition, he incurred $720.00 in labor costs for the cleanup of property due *1056 to storm damage; $90.00 for septic tank cleanup; $540.00 in costs for electrical repair; $25.00 to replace water board; $225.85 for plumbing; $20.00 in landfill costs to remove debris from the storm; and $6,500.00 on the improvement of a boat dock on the said property. The payoff will be $63,840.60.”
In reply, the Peinhardts sent a letter of tender to the Megginsons’ attorney, stating that they would tender all sums required to be paid under Ala.Code 1975, § 6-5-253, in order to exercise their right of redemption. The letter stated that the sum tendered would be $61,903.84, rather than $63,840.60; this amount consisted of $53,412.68, which was the purchase price First Commercial had paid at the foreclosure sale, rather than the $55,719.75 the Megginsons had paid at closing, plus the charges for taxes and fees that were outlined in First Commercial’s June 15 letter, none of which the Peinhardts contested. The letter went on to state that the payoff amount would also include the additional sum of $8,491.16, reflecting the charges for improvements asserted in the Meggin-sons’ letter, but that those charges were contested. The letter then stated:
“Therefore, please be advised that of the amount tendered, the Peinhardts expressly contest their obligation to tender the sum of $8,491.16; reserve all rights to recover the same; expressly do not waive any contention or assertion that those sums are not due; and further specifically assert that those charges enumerated in your letter of October 12, 1993 are not lawful charges as that [term is] used in § 6-5-254(a). Moreover, in response to your written statement of charges and in compliance with § 6-5-254(b), the Peinhardts, having disagreed with those charges, hereby appoint Bingham D. Edwards, Esq. ... as referee to ascertain the value of any permanent improvements listed as lawful charges in your letter.”
On October 22,1993, exactly one year after the. date of foreclosure, the Peinhardts delivered to First Commercial a check in the amount of only $53,412.68, representing only the amount of their remaining indebtedness; they did not include the $8,491.16. for the improvements they had contested in their letter.
On October 29,1993, the Peinhardts’ counsel received a letter from the Megginsons stating that, because the Peinhardts had not paid the disputed $8,491.16 as part of the redemption price, they had failed to tender, within the statutory time, the amount needed for redemption. The letter also named a referee for the Megginsons in the dispute over the reasonable value of the improvements on the land; however, it stated that the naming of the referee was done “without waiving any right to object to the attempted redemption as untimely.” First Commercial’s counsel received a copy of this letter and, in response, returned the $53,412.68 check to the Peinhardts.
The Peinhardts’ and Megginsons’ respective referees never met, and nothing more transpired until the Megginsons filed this action on January 19, 1995, to clear title on the property, asserting that the Peinhardts had not tendered the lawful redemption charges within the one-year limit.
II.
Under Alabama law, a party seeking to redeem property must either sue or tender all lawful charges, including costs of permanent improvements, within one year of foreclosure. Ala.Code 1975, § 6-5-252(a), § 6-5-253(a)(l). The Peinhardts argue that, even without their paying the amount of the disputed improvements, the $53,412.68 they tendered was nevertheless sufficient to satisfy the redemption amount.
The Peinhardts rely on Springer v. Baldwin County Federal Sav. Bank, 562 So.2d 138 (Ala.1989), wherein we held that a mortgagee who purchases mortgaged property at a foreclosure sale and then resells it to a third party during the redemption period is required, upon redemption, to subtract from the mortgagor’s debt the profit it had realized. There, the Court pointed out that § 6-5-253(d) allows a set-off for the profits from the sale of cut timber, oil, gas, and mineral during the redemption period, and for the amount by which buildings on the property diminish in value during that time, and that the mortgagee becomes a trustee for the *1057 mortgagor as to these amounts. The Court thus reasoned that the mortgagee, as trustee, must set off these realized profits from the amount of the mortgagor’s debt.
The Peinhardts point out that, according to First Commercial’s statement, it sold the lakefront property to the Megginsons for $55,000 and sold another parcel to someone else for $10,000 and realized a substantial profit from these sales. Although the record is unclear as to exactly how much profit First Commercial realized on its sale of the land as divided into several parcels, it contains substantial evidence indicating that such a profit existed and was not set off against the Pein-hardts’ indebtedness on the property as a whole. There is, therefore, a question of fact as to the amount of profit First Commercial realized and also a question of fact as to whether this profit, when subtracted from the amount of the Peinhardts’ indebtedness, would reduce the redemption amount to the point that their tender of $53,412.68 would be sufficient to satisfy it, even adding in the disputed value of the permanent improvements made on the property. In view of this, the trial court’s summary judgment is therefore reversed, and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, and INGRAM, JJ., concur.

. Two of the parcels were sold to persons who are not parties to this action. First Commercial maintains possession of the fourth parcel.